UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS DENISON, on behalf of himself
and others similarly situated,

    Plaintiff,

v.                                               Case No.:   2:20-cv-89-FtM-66MRM

FIRST FAMILY INSURANCE, INC.,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff, Thomas Denison's Opposed Motion to Facilitate Notice. (Doc. 13). Plaintiff asks the Court to conditionally certify a collective[1] of insurance salespersons who worked for Defendant, First Family Insurance, Inc. ("FFI") in this purported Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* collective action. (*Id.* at 1). Plaintiff also asks that the Court approve Plaintiff's proposed notice (Doc. 13-1) and allow Plaintiff to engage in limited discovery to facilitate mailing of that notice. (Doc. 13 at 1-2). Defendant responded in opposition, arguing mainly that Plaintiff's proposed collective is not similarly situated. (*See* Doc. 18). The matter is, therefore, ripe. For the reasons set forth below, the Undersigned recommends that Plaintiff's Motion (Doc. 13) be **DENIED WITHOUT PREJUDICE**.

---

[1] The parties' briefing refers to a putative "class" and putative "class members." (*See* Docs. 13 and 18 *passim*). Plaintiff does not appear to seek relief under Fed. R. Civ. P. 23. To avoid any potential confusion with standards applicable to class actions or class certification under Fed. R. Civ. P. 23, the Undersigned uses the term "collective" instead of "class."

## BACKGROUND

Plaintiff filed his Complaint seeking to recover unpaid overtime compensation on behalf of himself and all other similarly situated employees of FFI on February 7, 2020. (Doc. 1). Plaintiff alleges he was a non-exempt, hourly employee who worked as an insurance salesperson and that he "worked more than 40 hours per week during nearly every week of his employment, without being paid the federally mandated wage for overtime. Specifically, Plaintiff was paid a maximum of 40 hours per week, despite the fact that he worked significantly more hours." (Doc. 1 at 1).[2] Plaintiff's Complaint alleges one count for failure to pay overtime in violation of 29 U.S.C. § 207. (*Id*. at 4). FFI Answered the Complaint and, among other things, raised the administrative exemption affirmative defense to Plaintiff's allegations arguing that its salaried employees are exempt from overtime compensation. (Doc. 12; *see also id*. at 4).

Plaintiff now moves the Court for an order:

> (1) determining that this case proceed as a collective action; (2) authorizing the mailing of a proposed notice to all similarly-situated current and former salespersons who are or were employed by [FFI] at any time within the limitations period to inform them of their right to opt into this lawsuit; (3) ordering Defendant to produce a computer readable data file containing the names, addresses, Social Security and telephone numbers of such salesperson employees within eleven days of this Court's Order granting Plaintiff's notice motion; (4) ordering that notice be mailed by Plaintiff to such salesperson employees within 10 days of receipt of the data file(s) from Defendant so that notice may be promptly distributed to such employees; and (5) ordering that such salesperson employees must return their consents to join to Plaintiff's counsel within 60 days of

---

[2] As explained in more detail below, the parties offer conflicting descriptions of Plaintiff's position. For example, Plaintiff alleges in the Complaint that he was an hourly employee (*see* Doc. 1 at 1) and his declaration states he received a flat fee for a two-week payroll period that did not increase if he exceeded forty hours per week, but was reduced if he worked fewer than forty hours per week (Doc. 13-2 at 1). FFI, however, insists that all salespersons it employed after October 1, 2018 were salaried employees (Doc. 18 at 2). Thus, if FFI is correct, Plaintiff would be categorized as a salaried, not hourly, employee because Plaintiff represents he began working for FFI in August 2019. (Doc. 13-2 at 1).

> the date of mailing of the notice if they wish to join as party plaintiffs.

(Doc. 13 at 1-2).

Accordingly, there are two issues the Court must address. First, the Court must determine whether conditional certification of Plaintiff's proposed collective is appropriate. Second, if the collective is appropriate, the Court must determine whether to approve Plaintiff's proposed notice. The Undersigned first addresses the appropriate legal standard and then addresses each of these issues below.

## LEGAL STANDARD

The FLSA authorizes the use of collective actions against employers accused of violating the FLSA. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). The purposes of the collective action are twofold: (1) to reduce the burden on plaintiffs by pooling their resources; and (2) to efficiently resolve common issues of fact and law that arise from the same illegal conduct. *Id.* at 1264. Basically, a collective action allows the efficient resolution of a large number of plaintiffs' claims at one time. *Id.*

An FLSA action may be maintained as follows:

> against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). "Thus, to maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated." *Morgan*, 551 F.3d at 1258 (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)). Further, to participate in a collective action,

each individual must affirmatively opt into the suit. *Id.* (citing *Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1017 (11th Cir. 2007)).

The Eleventh Circuit has adopted a two-tiered approach to determine whether a collective action should be certified under § 216(b). *Id.* at 1218. The two-tiered approach consists of the following:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery. The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives – i.e. the original plaintiffs – proceed to trial on their individual claims. Based on our review of the case law, no representative class has ever survived the second stage of review.

*Hipp*, 252 F.3d at 1218. At this point, the case is at the "notice stage" and the Court must decide whether to conditionally certify notice should be given to potential members of the collective.

## DISCUSSION

### I. The Proposed Collective

To begin, the Undersigned notes that it is not entirely clear which collective Plaintiff seeks to conditionally certify. For example, in his Complaint, Plaintiff asks that the Court send

notice to "*all* persons who were formerly or are currently employed by Defendant[] [FFI], and who were paid in a similar manner as Plaintiff, or who were so employed during the Liability Period." (Doc. 1 at 1-2 (emphasis added)).  In his Motion, however, Plaintiff describes the putative collective as "*all* current and former salespersons who were paid wages for no more than forty hours per week and were employed by Defendant at any time within three years prior to the date of mailing of the opt-in notice." (Doc. 13 at 2 (emphasis added)).  But then Plaintiff's proposed notice addresses "[a]ll present and former salespersons employed *in Florida* by [FFI] at any time from *INSERT date 3 years prior to notice mailing date* to the present [sic]." (Doc. 13-1 at 1 (first emphasis added)).  FFI focuses on this last definition and construes Plaintiff's proposed collective as "all present and former salespersons employed in Florida by FFI at any time from three (3) years prior to notice mailing date to present." (Doc. 18 at 2).  Because FFI's interpretation tracks Plaintiff's actual proposed notice, the Undersigned construes Plaintiff's proposed collective as follows:  "All present and former salespersons employed in Florida by FFI at any time from three (3) years prior to the notice mailing date to the present."

Next, the Undersigned addresses whether Plaintiff has shown whether other employees wish to opt into this matter.

## II.   Other Employees Who Desire to Opt-In

The Court must inquire whether Plaintiff has shown that other employees wish to opt into this matter.  "The number of plaintiffs necessary to demonstrate a desire to opt in is not many, sometimes as few as two, three, or four." *Lemming v. Sec. Forces, Inc.*, No. 8:10-cv-1469-T-23AEP, 2010 WL 5058532, at *1 (M.D. Fla. Dec. 6, 2010); *see also Kubiak v. S.W. Cowboy, Inc.*, No. 3:12-cv-1306-J-34JRK, 2014 WL 2625181, at *8 (M.D. Fla. June 12, 2014).  At the notice stage, "the plaintiff need only demonstrate a 'reasonable basis' to believe that similarly

5

situated individuals exist in the proposed class." *Kelley v. Taxprep1, Inc.*, No. 5:13-cv-451-OC-22PRL, 2014 WL 10248251, at *1 (M.D. Fla. Apr. 2, 2014) (citation omitted).  A plaintiff may present evidence of other employees who desire to opt in by affidavit, consents to join the lawsuit, or expert evidence on the existence of other similarly situated employees.  *Kubiak*, 2014 WL 2625181, at *8 (citing *Rodgers v. CVS Pharmacy, Inc.*, No. 8:05-cv-770-T–27MSS, 2006 WL 752831, at *3 (M.D. Fla. Mar. 23, 2006)).

Here, the Undersigned finds that Plaintiff has partially met his burden to demonstrate that other individuals desire to join his lawsuit because, in addition to Plaintiff, three other individuals have opted into this matter.  A little more than two months after Plaintiff commenced this action against FFI, individuals Nicholas Matarazzo and Andrew Simon joined the case and filed their declarations in support of Plaintiff's Motion.  (*See* Docs. 13-3, 13-4).  Additionally, one other individual—Benjamin Leaton—has also filed a consent to join form.  (Doc. 22-1).

This case has now been pending for approximately seven months and while three individuals may not be a substantial number, courts have conditionally certified collectives with fewer individuals.  *See Guerra v. Big Johnson Concrete Pumping Inc.*, No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006); *see also Compere v. Nusret Miami, LLC*, 391 F. Supp. 3d 1197, 1205 (S.D. Fla. 2019); *see also Wynder v. Applied Card Systems, Inc.*, No. 09-8004-CIV, 2009 WL 3255585, at *3 (S.D. Fla. Oct. 7, 2009).  "Even one opt-in notice can be sufficient to meet the first requirement for conditional certification, and courts in this district have conditionally certified classes with just one."  *White v. SLM Staffing, LLC*, No. 8:16-cv-2057-T-30TBM, 2016 WL 4382777, at *2 (M.D. Fla. Aug. 17, 2016); *see also Brooks v. A. Rainaldi Plumbing, Inc.*, No. 6:06-cv-631-Orl-31DAB, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006) ("Even a single affidavit or consent to join submitted by another individual stating that

6

they are similarly situated and wish to join the suit is enough to bring the [p]laintiff's contentions above pure speculation.").

But Plaintiff has not established that a statewide collective is appropriate. Specifically, Plaintiff asserts that because the three individuals were "all employed in the same geographic location (Florida)" that a statewide collective is appropriate. (Doc. 13 at 7). But FFI argues that "Plaintiff and the two other employees seeking to join this matter were at the Fort Myers location. Accordingly, even if the court certifies a conditional collective, Plaintiff's proposed notice plan must be limited to salespersons operating out of the Fort Myers, Florida location or in the alternative, be rejected as overly broad." (Doc. 18 at 3). Based on Plaintiff's declarations, the Undersigned agrees with FFI.

A "plaintiff must proffer a minimum quantum of evidence to warrant the creation of a collective [action]. The mere anticipation that others may want to join the lawsuit or the mere presence of a uniformly adverse compensation policy is insufficient by itself." *Kubiak*, 2014 WL 2625181, at *8 (internal quotation marks omitted; quoting *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006)). Moreover, "[c]ertification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit." *Id.* (emphasis in original; quoting *Rodgers,* 2006 WL 752831, at *3).

Here, Plaintiff's declarations are nearly identical in substance, containing only minor differences. (*See* Docs. 13-2, 13-3, 13-4).[3] All three declarations state that the individuals worked "in the same Lee County, Florida location." (*Id*.). Additionally, Plaintiff's declaration

---

[3] Mr. Leaton's Consent to Join form contains no factual allegations about his employment and instead is a boilerplate recitation of his desire to join this action. (*See* Doc. 22-1). Accordingly, the Undersigned does not address Mr. Leaton's Consent to Join form in this analysis.

7

states that FFI "employed approximately 30 persons in salesperson positions" but that those thirty also "worked in the same Lee County, Florida location." (Doc. 13-2 at 1). Nowhere else does Plaintiff offer evidence that individuals outside FFI's Lee County, Florida office(s) seek to join this action. Nor have any individuals working in FFI's other Florida offices actually joined this action.

While the Undersigned finds that Plaintiff has shown other individuals desire to join this action, the Undersigned also finds that Plaintiff has not shown that those individuals worked anywhere else but in FFI's Lee County, Florida location(s). Thus, the Undersigned recommends that the Court limit Plaintiff's proposed collective to only salespersons working in FFI's Lee County, Florida office(s). *See Hart*, 2012 WL 6196035, at *4 (finding that plaintiffs have the burden to "make an affirmative showing that other employees from across the nation wish to join this lawsuit so as to warrant conditional certification"); *see also Holmes v. Swissport Fueling, Inc.*, No. 2:15-cv-669-FtM-38MRM, 2017 WL 8794900, at *9 (M.D. Fla. Sep. 1, 2017) *report and recommendation adopted*, 2017 WL 4129838 (M.D. Fla. Sep. 19, 2017) (conditionally certifying modified class where plaintiff failed to make affirmative showing that other employees statewide wish to join lawsuit).

**III.     Plaintiff's Declarations and Whether Other Employees Are Similarly Situated**

The term "similarly situated" is not defined in the FLSA, and the Eleventh Circuit has not yet "adopted a precise definition of the term." *Lewis-Gursky v. Citigroup, Inc.*, No. 8:15-cv-2887-T-24MAP, 2017 WL 892604, at *3 (M.D. Fla. Mar. 6, 2017) (citing *Morgan*, 551 F.3d at 1259-60). To establish that plaintiffs are similarly situated, the Eleventh Circuit has stated that opt-in plaintiffs need only show that their positions are similar, not identical, to the positions held by the putative members of the collective. *Hipp*, 252 F.3d at 1217 (citing *Grayson,* 79 F.3d

8

at 1096). Even so, "a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of duties and pay provisions." *Lewis-Gursky*, 2017 WL 892604, at *3 (quoting *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)). "A plaintiff has the burden of showing a 'reasonable basis' for his claim that there are other similarly situated employees." *Morgan*, 551 F.3d at 1260 (citations omitted). While a plaintiff's "burden at the notice stage is not heavy, it is not 'invisible.'" *Lewis-Gursky*, 2017 WL 892604, at *3 (quoting *Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-cv-00470-T-27TBM, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012)).

> While [29 U.S.C. § 216(b)] does not define 'similarly situated,' courts have filled this gap by identifying the following factors relevant to such a determination: 1) whether the plaintiffs all held the same job title; 2) whether they worked in the same geographic location; 3) whether the alleged violations occurred during the same time period; 4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker; and 5) the extent to which the actions which constitute the violations claimed by plaintiffs are similar.

*Echevarria v. Las Vegas Beach, Inc.*, No. 10-20200-CIV, 2010 WL 2179747, at *2 (S.D. Fla. June 1, 2010) (citing *Franco v. Bank of America Corp.*, 691 F. Supp. 2d 1324, 1326 (M.D. Fla. Feb. 18, 2010)).

Plaintiff asserts that the "declarations of [himself], Nicholas Matarazzo, and Andrew Simon create a reasonable basis for the belief that a class of similarly situated employees suffered similar FLSA violations." (Doc. 13 at 7). Specifically, Plaintiff argues that these declarations show that:

> The employees hold or held the same positions (insurance salespersons). They are or were all employed in the same geographic location (Florida). They were all denied overtime

9

> compensation regardless of the hours worked. The fact that they have the same job duties and suffered the same wage violation establishes that they are similarly situated. The fact that they all worked in the same geographic location and were denied overtime pursuant to the same policy or practice suffices to make the required 'rudimentary' showing of commonality.

(Doc. 13 at 7-8 (citing Docs. 13-2, 13-3, 13-4)).

Here, the Undersigned finds that Plaintiff's three declarations cannot satisfy Plaintiff's burden because of their conclusory nature and conflicting information in the parties' filings. The declarations repeat conclusory allegations, nearly verbatim, and preclude the Court from conducting a meaningful review. The individuals state that they began working for Defendant in 2019 and that their "job duties involved selling health insurance via telemarketing before and during the open enrollment period." (Docs. 13-2 at 1, 13-3 at 1, 13-4 at 1). With no supporting facts, the declarations assert "[b]ased on my personal observation, I know that the duties of other salespersons were similar to my own" and that FFI "also employed salespersons with the same job duties as mine prior to the date on which I commenced my employment." (*Id.*). All employees claim they had a fixed wage plus a commission through sales and that while FFI reduced their wage if they worked less than forty hours a week, FFI did not provide overtime compensation for working over forty hours per week. (*Id.*). The employees claim that FFI told them they were not entitled to overtime compensation and conclude "I am aware that it was a policy and practice of [FFI] not to pay overtime compensation to its salespersons, regardless of the number of hours per week that they worked or the commissions they earned." (*Id.*).

When faced with similarly deficient affidavits, courts have routinely found that plaintiffs did not provide enough facts to support conditional certification. *See*, *e.g.*, *Kelley*, 2014 WL 10248251, at *1. In *Kelley*, the four cut-and-paste affidavits filed by the plaintiffs did not provide sufficient facts to support conditional certification. *Id.* The Court found that those

affidavits were not probative of the similarly situated question.  *Id.*  Here, much like *Kelley*, the three cut-and-paste, form declarations from Plaintiff and opt-in plaintiffs are identical and consist of conclusory assertions.  Like *Kelley*, therefore, Plaintiff's declarations are not probative of the similarly situated question.  *See* 2014 WL 10248251, at *2.  Plaintiff's Motion should be denied for this reason alone.

However, there is a second compelling reason why the proposed collective is not similarly situated.  Defendant argues heavily that a change in its compensation structure "preclude[s] the possibility of all salespersons being 'similarly situated.'"  (Doc. 18 at 2).  Specifically, Defendant argues that:

> There are significant variations in compensation structures among the putative class members during the statutory period that preclude the possibility of all salespersons being similarly situated.  FFI's salesperson's compensation structure has changed during the statutory period by transitioning all insurance salespersons from hourly wages to salary.  This occurred as of October 1, 2018.
>
> These different compensation structures in the last three years for its salespersons, results in some, but not all, of the insurance salespersons having been paid under different payment structures . . . Based on the variation in compensation structures over the timeframe noted by the Plaintiff . . . FFI's insurance salespersons are not similarly situated for the purpose of a Collective Action.
>
> In this matter, FFI's Salesperson's compensation structure has gone through a change during the statutory period.  As of October 1, 2108, all of FFI's Salespersons went from being paid hourly to salaried.  During the change, FFI paid all of its Salespersons a fixed annual salary, plus commissions.  The commissions the salespersons receive are based on every sale that they make.  If a salesperson worked prior to the compensation change, their payment structure would vary differently than those who were employed after the change.  The difference in the compensation structures is sufficient to find that the putative class members are not similarly situated.

(Doc. 18 at 2-3, 6).

In support of this argument, Defendant attaches to its response the Affidavit of Katelyn Sushil, Defendant's Director of Human Resources. (Doc. 18-1). Ms. Sushil represents that "FFI's insurance salespersons' compensation structure has changed within the three-year statutory period. As of October 1, 2018, the compensation structure for the salespersons changed from hourly to salaried." (*Id*. at 1). Ms. Sushile also states that "[a]side from the salary each salesperson takes in during the year, each salesperson is also paid commission on every sale they make." (*Id*.).

Plaintiff need only show the positions are *similar*, and not *identical*. *Hipp*, 252 F.3d at 1217. Compensation is but one factor of many that courts consider in resolving the "similarly situated" issue. *Compare Fajardo v. Central Beef Ind., LLC*, No. 5:11-cv-630-Oc-10TBS, 2012 WL 13140729, at *2 (M.D. Fla. May 16, 2012) (finding that plaintiffs similarly situated despite "some employees [being] paid according to different pay structures"), *with Echevarria*, 2010 WL 2179747, at *2 (noting that some seven different pay practices applied differently against different plaintiffs likely to give rise to unique and individualized potential defenses and, with other factors, weigh against finding plaintiffs similarly situated).

The Undersigned agrees with Defendant and finds that differences in the putative collective's compensation structure preclude granting conditional certification. Because Plaintiff seeks to certify a class of individuals spanning back to 2017 and FFI claims that it transitioned all of its employees from hourly to salary, plus commissions, after October 1, 2018, FFI would, then, have different defenses to different employees within the collective. This Court has denied motions for conditional certification when plaintiff-specific inquiries would be required as to whether an individual was misclassified and thus exempt under the FLSA. *See Tussing v. Quality Res., Inc.*, No. 8:09-cv-1833-T-26AEP, 2009 WL 4350253, at *3 (M.D. Fla. Nov. 25,

12

2009); *Kelley*, 2014 WL 10248251, at *2. Plaintiff's motion and supporting affidavits do not adequately address this issue. Without more meaningful discussion from Plaintiff on this issue or more detailed declarations, the Undersigned cannot find that Plaintiff has met his burden in showing that FFI's salespersons are all similarly situated.

## CONCLUSION

Based upon the foregoing, the Undersigned **RESPECTFULLY RECOMMENDS** that Plaintiff's Opposed Motion to Facilitate Notice (Doc. 13) be **DENIED WITHOUT PREJUDICE**.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on October 5, 2020.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties

14